IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL DOCKET NO.: 5:06CR35-V

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| JACKIE CLARK, ) | |
|       Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se letter motion dated October 5, 2007, filed and docketed the same day as a Motion For New Trial. (Document #340) Because the Defendant's complaints were aimed in large part at trial counsel,[1] the Court deferred ruling until newly appointed counsel had an opportunity to review the trial record and determine whether a legal basis existed to justify the pro se motion.

**I.**

On September 28, 2007, Jackie Clark was convicted by a jury of Count One, namely, conspiracy to manufacture and possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, involving at least five hundred (500) grams of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Clark was likewise convicted of Count Fifteen which alleged that Clark knowingly and intentionally employed, hired, used,

---

[1] In his letter, Defendant states that his "lawyer seems to have sold [him] out"; that "no one can get past [counsel's] voicemail"; "too much evidence was left out on [his] attorney's part"; that defense counsel failed to interview and call potential witnesses; that defense counsel failed to introduce or rely on certain items of potentially exculpatory evidence; and that counsel "redefined the word inadequit[sic]." (Letter Motion at 1-2.)

1

persuaded, induced, enticed and coerced persons under eighteen years of age to violate the controlled substances act in violation of 21 U.S.C. §§841 and 861.

Defendant's first counseled motion for new trial was premised upon a post-trial letter written by federal prisoner Mark Stroud Wedding ("Wedding") on September 21, 2008, to Attorney Baker McIntyre, Clark's second court-appointed counsel. (Documents ##482-3 and 482-4) Wedding's letter concerned the trial testimony of government witnesses John Nelson and Donnie Hice. In the letter, Wedding claimed to have talked with both Nelson and Hice about the veracity of their testimony while housed together in the local jail and generally offered his assistance to the defense. Since that time, however, Wedding has authored a letter that essentially withdraws Wedding's offer to testify on behalf of Defendant Clark and instead asks to be called as a witness for the government in the event of a new trial.[2]

Clark later complained of dissatisfaction with his second attorney and moved for appointment of new counsel. (Document #493) Clark's motion was granted on May 3, 2010 by oral order. John Cacheris, Clark's third court-appointed counsel, was selected on May 5, 2010, to represent Clark through sentencing.

After several continuances, an evidentiary hearing was held on December 14, 2010, for the purpose of resolving Clark's motion for new trial. Defendant elected not to present live testimony or any additional documentary evidence in support of the written motion. Although counsel did not

---

[2] At the hearing, the Government introduced a copy of a letter written by Wedding to the United States Attorney's Office on April 18, 2010, recanting Wedding's statement implying Clark may not have received a fair trial. Wedding now asserts: "I have spoken with Mr. Clark's attorney and told him I did not won't[sic] to testify for him because all the stuff I know would definitely find him guilty and plus ther eis nothing for me to bennefit[sic] from.... I've got reliable information that would help put Mr. Clark away should he get another trial." According to the prosecution, there is at least one other similar letter authored by Wedding concerning this matter that was not introduced as evidence.

expressly abandon the legal arguments made previously, it appears that the only legal basis being advanced presently is the violation of the sequestration order by government witness Donnie Hice and its impact on Defendant's case. Relying heavily upon the trial record, the Court briefly addresses each issue raised by the Defendant.

## II.

Defendant's timely motion for new trial is governed by Rule 33 of the Federal Rules of Criminal Procedure, which provides in pertinent part:

> **(a) Defendant's Motion.** "Upon the defendant's motion, the court may vacate any judgment and grant a new trial **if the interest of justice so requires** . . . ."
>
> **(b) Time to File.**
>
> **(1) Newly Discovered Evidence.** Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. . . .
>
> **(2) Other Grounds.** Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

FED. R. CRIM. P., Rule 33 (2009)(*emphasis added*).

For purposes of Rule 33, the Fourth Circuit utilizes the following five-part test to determine whether a new trial should be granted on the basis of "new evidence": (i) the evidence must in fact be newly discovered since the trial; (ii) facts must be alleged from which the court may infer diligence on the part of the movant; (iii) the evidence relied upon must not be merely cumulative or impeaching; (iv) the evidence must be material to the issues involved; and (v) **the evidence must be such that, on a new trial, it would probably produce an acquittal**. United States v. Wilson, 624 F.3d 640, 663 (4th Cir.2010) (*quoting* United States v. Fulcher, 250 F.3d , 249 (4th Cir. 2001);

United States v. Custis, 988 F.2d 1355, 1359 (4th Cir.1993)). "Without ruling out the possibility that a rare example might exist, the Court has never allowed a new trial unless all five elements [have been] established." Wilson, 624 F.3d at 663 (citing Fulcher at 249 and United States v. Singh, 54 F.3d 1182, 1190 (4th Cir.1995)).

Where a motion for new trial is based upon information that a trial witness has since recanted trial testimony, such recantation is "looked upon with the utmost suspicion."" United States v. Johnson, 487 F.2d 1278, 1279 (4th Cir.1973) (*citations omitted*). A motion for new trial based upon a witness' recantation of trial testimony "should be granted only if the court is 'reasonably well satisfied' (1) that the testimony given by a material witness was false; (2) **the jury *might* have reached a different conclusion without the false evidence**; and (3) the party seeking the new trial was surprised by the false testimony and was unable to meet it or did not know of its falsity until after trial." Wilson, 624 F.3d at 663-64 (*internal citations omitted* and *emphasis added*); accord United States v. Roberts, 262 F.2d 286, 293-94 (4th Cir.2001). "The failure to meet any one of the three prongs is fatal." Id. at 664 (*citing* United States v. Carmichael, 726 F.2d 158, 159 (4th Cir.1984)).

Finally, a jury verdict should not be overturned unless the evidence "weighs heavily" against the verdict. *See* United States v. Smith, 451 F.3d 209, 216-17 (4th Cir.2006); United States v. Perry, 335 F.3d 316, 320 (4th Cir.2003); United States v. Arrington, 757 F.2d 1484, 1486 (4th Cir.1985).

**III.**

As an initial matter, the Court's analysis focuses on the significance and likely impact of the challenged testimony.[3] Thus, the Court considers generally whether the purported "new" evidence is material to the issues involved, and whether the evidence is such that, on a new trial, it would probably produce an acquittal. As for the trial testimony Wedding originally claimed to have been recanted, the Court similarly considers whether without the allegedly "false" testimony, the jury may have reached a different conclusion.

As demonstrated by his own April 2010 letter, the information initially provided by Mark Wedding is found to be wholly incredible. Indeed, the Government contends that Wedding has a history of providing unreliable information to both state and federal prosecutors in an attempt to help himself. (USA Brf: 3-4) Notwithstanding the credibility issues, the newly discovered evidence is not material to the question of Defendant Clark's guilt or innocence and likewise, is unlikely to warrant or provide a probable basis for an acquittal in the event of a new trial.

**A. John Robert (a/k/a "Rusty") Nelson**

According to Wedding's letter, Nelson:

> "Admitted to [Wedding] his testimony was a lie. He lied on the stand for the prosecution and the D.E.A. He lied cause he also had a grudge for Jackie cause of his unfinished tattoo. The only reason he lied [] was to be given a 5K1.1 and cause he was told Mr. Clark had some sex thing with underage girl."

(Document #482-4)

---

[3] The Government appears to concede satisfaction of the first two criteria - at least as the issues were initially presented to the Court. In addition, the defense does not appear to seriously dispute that the evidence is fairly characterized as impeachment evidence. If the Court so held, failure to satisfy the third criteria would provide an independent basis for denial of the motion.

The Court would be hard pressed to find that Nelson's testimony was "material" or "key" to Clark's conviction. Nelson testified that he interacted with Defendant Clark on two occasions at Clark's tattoo shop. According to Nelson, he first met Clark when he was asked to pay Clark with methamphetamine for his friend's tattoos. Nelson testified, in fact, that he compensated Clark for his friend's tattoo with half a gram of methamphetamine. Nelson returned another day to have Clark tattoo over an existing tattoo Nelson wanted to cover up. The deal allegedly struck between Clark and Nelson similarly called for Nelson to pay Clark with methamphetamine for his services. In fact, Nelson testified that *he* [Nelson] distributed 1/16 of a gram of methamphetamine to Clark on that occasion. (Trial Tr.: 67-8) Nelson did not provide testimony concerning *distribution* of any controlled substance by Clark.

### B. Donnie Hice / Sequestration Order Violation

According to Wedding, Donnie Hice ("Hice") also gave false testimony at trial in order to obtain a downward departure. In 2009, Wedding asserted that Hice admitted to him that the "D.E.A. and D.A. told [Hice] what to say." (Document #428-4) Wedding's initial contention cannot support Clark's motion for new trial as Hice's testimony was not considered by the jury.

The Court struck the testimony of Donnie Hice for reasons entirely unrelated to Wedding's claim. During trial, allegations were made that Hice was violating the sequestration order by sharing information and discussing the case with others in the holding cell. The Court conducted a *voir dire* of various government witnesses outside the jury's presence. The Court determined that Hice and another proposed witness for the government, Arlie Henson (who had not already been called to testify), had engaged in some discussion about the specifics of the case before court started that morning. The Court noted that there wasn't a long period of time when Hice and the other witnesses

in the holding cell had any further opportunity for discussion. In other words, the undersigned found that the violation was contained for the most part and limited to a single discussion between Hice and Henson occurring earlier in the day. There was also some indication that the prosecution had not explained adequately the terms of the sequestration order. As a result, the Court expressly instructed the jury to disregard the portion of Hice's testimony that had already been presented and barred Henson from testifying altogether. (Document #475 122-23)

### C. Megan Clark

In defense filings submitted before appointment of Attorney John Cacheris, Clark also asserted that similar problems existed with the jury's reliance on the testimony of his daughter, Megan Clark ("M. Clark"). (Def.'s Mot. ¶18) M. Clark's testimony was extremely damaging to the defense. M. Clark testified about observing drug use and dealing at her father's tattoo shop. M. Clark testified that her father provided her, and on occasion her friends, with methamphetamine and marijuana. M. Clark testified that her father gave her large amounts of marijuana to sell at school. Finally, M. Clark testified that she grew uncomfortable with the conditions / environment of her dad's home and eventually asked to return to her mother.

Defendant's motion suggests that M. Clark gave a recorded interview to Defendant Clark's State Attorney, Shell Pearce ("Pearce"), prior to trial that was never produced to defense counsel.[4] Presuming timeliness of this particular issue, the Court first notes that the alleged recantation by M.Clark was adequately explored at trial. (Document #477 at 41-43) Notwithstanding Defendant's

---

[4] Defendant doesn't address this particular issue within his memorandum of law. The Government, in its opposition brief, fails to mention the issue at all. The prosecution indicates now that it never had any such audio tape and that trial counsel was unable to obtain it [presumably from the State Attorney]. Thus, no audio tape has ever been produced in support of Defendant's motion for new trial.

assertion that an audio recording of M. Clark's statements to Pearce (criminal defense attorney that initially represented Clark on state charges) was withheld from trial counsel, M. Clark later admitted her attempt to recant earlier statements about events she observed while in Clark's home and business. M. Clark explained on redirect that once her father was incarcerated, she felt obligated to try to help him get out of jail and was encouraged by Clark's girlfriend to recant. (Document #477 at 43) In addition, trial counsel for Clark cross-examined M. Clark about the alleged inconsistencies between her trial testimony and statements provided earlier to law enforcement. (Document #477 at 32- 41) Accordingly, the credibility of the witness (Clark's daughter) was certainly highlighted and placed at issue for the jury to evaluate and weigh. The jury apparently found M. Clark's testimony credible in that Clark was convicted of employing, hiring, using, persuading, inducing, enticing and coercing persons under 18 years of age to violate the Controlled Substances Act, 21 U.S.C. §§ 841 and 846.

To the extent Clark now claims that a discovery violation occurred that casts doubt upon the integrity of the verdict rendered, the undersigned disagrees. Defendant must show that a discovery violation affected his substantial rights and / or caused him "substantial prejudice." "Substantial prejudice" encompasses undue surprise, lack of opportunity to prepare a defense, or a mistake of substantial influence. In evaluating "substantial prejudice," the Court should consider the following factors: 1) nature of the evidence sought; 2) the extent to which it bore on critical issues in the case; 3) the reason for its non production; and 4) **the strength of the Government's untainted proof**. United States v. Stevens, 985 F.2d 1175, 1180 (2nd Cir.1993). Here, because the Government's untainted proof was strong, Defendant Clark is unable to show substantial prejudice.

## IV.

**IT IS HEREBY ORDERED** that Defendant's Motion for New Trial is **DENIED**.

Signed: December 21, 2010

Richard L. Voorhees
United States District Judge