# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CRIMINAL ACTION NO. 5:06-CR-00035-KDB-DCK-14

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | **ORDER** |
| **JACKIE CLARK,** | |
| **Defendant.** | |

**THIS MATTER** is before the Court on Defendant Jackie Clark's *pro se* Motion for Compassionate Release and Home Confinement pursuant to 18 U.S.C. § 3582(c)(1)(A), the First Step Act of 2018, and the Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020. (Doc. No. 599). The Government opposes the motion. For the reasons explained below, the Court will deny Defendant's motion.

## I. BACKGROUND[1]

In June 2006, Defendant was indicted and charged with one count of conspiracy to manufacture and possess with intent to distribute at least 500 grams of a mixture containing methamphetamine and one count of persuading, inducing, or enticing persons under the age of 18 to violate one or more federal drug laws. Defendant proceeded to trial and was convicted of both counts in September 2007. Although Defendant originally received a life-sentence on each of those counts,

---

[1] A comprehensive recitation of the lengthy post-trial history of Defendant's case is set forth in this Court's July 20, 2020 Order denying Defendant's motion to vacate under 28 U.S.C. § 2255 in Case No. 5:18-cv-34. [Doc. No. 8]. Given the Court's familiarity with this background, only a brief summary is provided here.

he ultimately received a reduced sentence of 20 years imprisonment on each count to run concurrently with five years of supervised release on the conspiracy count and ten years of supervised release on the inducement count to run concurrently. [Doc. 542, at 2-3]. The sentence represented a significant downward variance from the guideline range, which was 30 years to life. [Doc. 550, at 2].

According to the Presentence Report (PSR), Defendant was responsible for distributing or possessing approximately 860 grams of methamphetamine and provided his 15-year-old daughter and two of her friends (ages 13 and 14) with methamphetamine. [Doc. 407, ¶ 20]. He also provided his daughter with marijuana to sell for him. *Id*. Defendant also threatened to kill several witnesses against him and encouraged other witnesses to lie at his trial. [Doc. 407, ¶ 21] Even after trial, Defendant continued to threaten at least one Government witness. *Id.* These threats appear consistent with Defendant's history, which includes a conviction for voluntary manslaughter related to an incident where Defendant stabbed his victim in the neck with a knife, a probation violation for possession of a firearm by a felon, and an arrest for communicating threats. *Id.* at ¶¶ 40-70. Defendant's criminal history also includes numerous drug-related convictions and several probation violations. *Id.*

Defendant is a 55-year-old male confined at FCI Elkton, a low-security federal prison in Ohio, with a projected release date of June 6, 2023. Defendant states that he suffers from diabetes, high blood pressure, high cholesterol and a recurring umbilical hernia that has necessitated three operations. (Doc. No. 599, at 3). According to his PSR, he describes his health as good but is allergic to Codeine and injured his knee in a motorcycle accident. (Doc. No. 407, ¶ 77). A review of Defendant's medical records provided by Bureau of Prisons (BOP) seem to support Defendant's

claims although it also appears all of those conditions are being adequately treated by BOP. *See e.g.,* Doc.603-1, at 15 (listing medications BOP is providing Defendant).

FCI Elkton currently has 1 inmate and 2 staff COVID-19 cases. There have been 9 inmate deaths, no staff deaths and 949 inmates and 52 staff have recovered. *See* Federal Bureau of Prisons, *COVID-19 Cases,* at https://www.bop.gov/coronavirus/ (last accessed on 9/28/2020).

On May 21 and 29, 2020, Defendant filed successive motions for compassionate release based on 18 U.S.C. § 3582(c)(1)(A). (Doc. Nos. 595, 596). On June 5, 2020, this Court denied the motion, without prejudice, because Defendant had not shown that he had exhausted his administrative remedies within BOP nor included any medical evidence. (Doc. No. 36). On August 6, 2020, Defendant filed another motion with this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on his health concerns and the number of prior positive cases at FCI Elkton. (Doc. No. 599). On August 12, 2020, the Court issued an Order for the US Attorney's Office to submit medical records from the BOP under seal. The Government filed a response in opposition on September 24, 2020 (Doc. No. 604) and filed a copy of Defendant's BOP medical records under seal. (Doc. No. 603).

## II.   LEGAL STANDARD

By statute, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of the exceptions to this general rule is a motion for compassionate release. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.**—The Court may not modify a term of imprisonment once it has been imposed except that—
>
>   (1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction
>>
>> . . .
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). A defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See, e.g.*, *United States v. Ebbers*, -- F. Supp. 3d --, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

The United States Sentencing Guidelines do not specifically contain a policy statement addressing motions for reductions in terms of imprisonment that are filed by an inmate. However, U.S.S.G. § 1B1.13 ("the Policy Statement") addresses motions for reductions in terms of imprisonment that are filed by the Director of the Bureau of Prisons (BOP). The Policy Statement largely mirrors the language of 18 U.S.C. § 3582(c)(1)(A) but includes a directive that the court determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). In determining whether a defendant is a danger to the safety of any other person or to the community, the Court must consider the following statutory factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of

terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the [defendant];

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

If the Court finds the defendant is not a danger to the safety of any other person or the community, the Policy Statement directs the Court to consider a variety of circumstances in determining whether extraordinary and compelling reasons justify a sentence reduction. U.S.S.G. § 1B1.13(2) App. Note 1. Specifically, the Court should consider whether any of the following circumstances exist: (1) "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" although a specific prognosis of life expectancy is not required; (2) the defendant is: "suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (3) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; (4) "[t]he death

or incapacitation of the caregiver of the defendant's minor child or minor children"; (5) "[t]he incapacitation of the defendant's spouse or registered partner"; or (6) "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" set forth in the prior factors. *Id.*

While courts agree that the Policy Statement and Application Notes set forth above apply to motions filed by the Director of the BOP, courts differ on whether the Policy Statement is binding on motions filed by the inmate. *See, e.g.*, *United States v. Lynn*, No. 89-0071-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019) (binding); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (not binding). "The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants." *Beck*, 425 F. Supp. 3d at 579. Accordingly, the majority of courts do not find the Policy Statement binding. Even so, the courts that find that the Policy Statement does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction still look to the old policy statement as it provides helpful guidance.

### III.  DISCUSSION

#### A. *Exhaustion of Administrative Remedies*

A prisoner may bring a motion for compassionate release before the court only if he "has fully exhausted all administrative rights to appeal a failure" of the BOP to bring a motion on his behalf or if 30 days have passed since the warden received his request, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Government does not challenge Defendant's claim that he has exhausted his

administrative remedies. Accordingly, the Court will proceed to address the merits of Defendant's motion.

### B. Policy Statements

Despite the lack of a policy statement clearly applicable to motions for compassionate release filed by defendants, the Court is guided by the general precepts of the Policy Statement in U.S.S.G. § 1B1.13. The Court finds it is not restrained by the Policy Statement in U.S.S.G. § 1B1.13 and is free to consider the COVID-19 pandemic, combined with other relevant circumstances, regardless of whether it falls within one of the existing categories in the U.S.S.G. § 1B1.13 commentary. A discussion of the 3553(a) factors below will adequately address concerns outlined in the Policy Statement.

### C. Extraordinary and Compelling Reasons

Defendant asserts that he suffers from medical conditions that make him particularly susceptible to complications from COVID-19. A review of his medical records shows that Defendant suffers from diabetes, high blood pressure, high cholesterol and an umbilical hernia. (Doc. No. 603). Medical providers have prescribed a variety of medications to treat these conditions. *Id*. The Defendant's medical conditions appear to be well-managed in BOP. The Court agrees with the Government that it does not need to address whether there are extraordinary and compelling reasons because a sentence reduction is not warranted in light of the danger Defendant poses to the community and other relevant § 3553(a) factors, as discussed below.

### D. Section 3553(a) Factors

At Defendant's sentencing, the Court considered each of the Section 3553(a) factors and determined that Defendant's conduct warranted a custodial sentence. In determining whether a reduced sentence is appropriate, the Court must again undertake such an analysis to determine that

Defendant's sentence is "sufficient, but not greater than necessary," to achieve the goals of sentencing. 18 U.S.C. § 3553(a). The Section 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed"; (3) "the kinds of sentences available"; (4) the sentencing guidelines; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." Id.

Regarding the nature and circumstances of the offense, Defendant's conviction was for a drug trafficking conspiracy that found him accountable for trafficking approximately 860 grams of methamphetamine. (Doc. No. 407, ¶ 20). Defendant was part of a 14-person conspiracy that over a five year period were responsible for at least 100 pounds of methamphetamine. *Id.* at 4. The nature and circumstances of Defendant's offense weigh in favor of serving his full term of imprisonment.

Defendant's criminal history reflects a nearly 25-year pattern of lawlessness that began when he was just 17. *Id.* at ¶¶ 40-70. It includes numerous convictions for drug offenses, a voluntary manslaughter conviction for stabbing a man in the neck, several larceny and/or breaking and entering convictions, numerous traffic convictions, and several probation violations, including one for possessing a firearm illegally. *Id.* The Court is of the firm opinion that a custodial sentence continues to be necessary to deter Defendant from future criminal conduct. With a projected release date of June 6, 2023, Defendant still has a large portion of his sentence remaining to be served. Reducing his sentence would not reflect the seriousness of his offense and would undermine the statutory goals of deterrence and promoting respect for the law.

Further, this history reflects a need to protect the public from further crimes of Defendant. Defendant continued to demonstrate his dangerousness by threatening numerous witnesses both before and after his trial. He also received an enhancement for possessing a firearm (again illegally) in connection with his drug trafficking. *Id.* at ¶ 30.

The Court in its discretion concludes that the Section 3553(a) factors do not weigh in favor of Defendant's request for compassionate release. Courts have consistently denied compassionate release for defendants with similar offenses and criminal records, even when they, like Defendant, presented CDC risk factors. *See e.g., United States v. Vasquez,* 2020 WL 5038006 (S.D.N.Y. Aug. 26, 2020) (defendant suffers from diabetes and other serious conditions, and has served 63% of 180-month sentence; relief is denied because he committed serious drug crimes while on parole for previous drug offenses); *United States v. Whitner,* 2020 WL 4431570, at *3 (W.D. Pa. July 31, 2020) (the defendant is at risk due to diabetes and obesity, but he committed a serious drug trafficking offense, had a prior conviction for drug trafficking and has an extensive criminal history); *United States v. Mack,* 2020 WL 4012837 (N.D. Ohio July 16, 2020) (inmate at FCI Elkton (where there was large outbreak) has diabetes, but has over two years remaining on 87-month sentence, and the defendant was involved in a conspiracy to distribute methamphetamine, and has a history of minor offenses and substance abuse; there is a "serious" possibility he will recidivate, and relief is denied); *United States v. Ikehara,* 2020 WL 3065104 (D. Haw. June 9, 2020) (defendant has 39 months remaining on 100-month drug sentence, and has lengthy criminal record for myriad offenses; relief denied notwithstanding coronary artery disease, heart disease, hypertension, hyperlipidemia, and Type 2 diabetes).

## IV. CARES ACT

In response to the COVID-19 pandemic, the President signed the CARES Act into law on March 27, 2020. Pub. L. 116-136, 134 Stat 281, 516. Section 12003(b)(2) of the Act gives the Director of the BOP authority to lengthen the maximum amount of time a prisoner may be placed in home confinement under 18 U.S.C. § 3624(c)(2) during the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP. On April 3, 2020, the Attorney General issued a memorandum to the Director of the BOP making that finding and directing the immediate processing of suitable candidates for home confinement. However, nothing in the CARES Act gives the Court a role in determining those candidates. *See United States v. Caudle,* 740 F. App'x 364, 365 (4th Cir. 2018) (district court lacks authority to govern designation of prisoners under § 3624(c)(2)).

## V. ORDER

**IT IS THEREFORE ORDERED** that Defendant's *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018, (Doc. No. 599), is **DENIED**.

**SO ORDERED.**

Signed: September 30, 2020

Kenneth D. Bell
United States District Judge